### JAMES E. HUTCHINSON et al.
#### v.
### JAMES F. SELF, Collector.

*Filed at Springfield November 26, 1894.*

1. STATUTES—*whether subject embraced in title.* The title, "An act to incorporate" a certain railroad company, sufficiently expresses the provisions in such statute giving municipalities power to subscribe to the capital stock and issue bonds therefor, within the meaning of the constitutional requirement.

2. SAME—*conferring power on towns to subscribe for stock—whether repealed by implication.* Power given in a railroad company's special charter to towns then and thereafter incorporated, to subscribe for the stock and issue bonds in payment, is not repealed, in the case of a certain town, by a charter passed for such town later, at the same session, which charter enumerated the town's powers without including that as to such stock and bonds.

3. SAME—*act of April 23, 1867, construed as to power of town to issue bonds.* The act of April 23, 1867, extending the provisions of the act of 1849 authorizing *counties* and *cities* to subscribe for railroad stock and issue bonds in payment, so as to include *towns*, does not, by making a different provision as to elections thereunder, exclude the power of a town to issue bonds as well as to *subscribe for stock.*

4. EVIDENCE—*burden of proof on objectors to taxes.* Those objecting to judgment in the county court against lands for a tax levied to pay town bonds, are required to prove their allegation that the election for the issuance of the bonds was held without sufficient call and notice,

5. MUNICIPAL BONDS—*whether invalid for lack of sufficient call for election.* The call for an election to authorize municipal bonds under the act of April 23, 1867, will be deemed sufficient where it appears by the record that a petition was presented and election ordered, "as specified in the petition," at not less than thirty days' notice.

6. SAME—*voted to railroad—presumption as to time of issue.* The presumption that municipal bonds voted to a railroad after the constitution of 1870 went into force are illegal, is overcome where it appears from the bond itself, the date of which is relied upon to raise the presumption, that the issue was duly authorized before the constitution went into force.

7. TAXATION—*what will overcome prima facie case on application for judgment.* The *prima facie* case which a collector of taxes makes by proof of a petition of tax-payers for an election for a subscription to capital stock, and an adoption of a motion by the municipality to hold the same, must be overcome by showing facts inconsistent with an election properly conducted, pursuant to notice properly given, or the application for judgment will prevail.

8. ELECTIONS—*proof held insufficient to show notices were not given.* The fact that two town clerks testified that they had never seen or found any notices of a certain election will not warrant the court in finding that no such notices existed, it not appearing from the testimony of such clerks that they had ever made search for the same.

APPEAL from the County Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding.

Messrs. GROSS & BROADWELL, for the appellants:

The doctrine is well settled that a municipal corporation cannot, without express authority, issue its negotiable bonds in aid of an extraneous object, such as a railway company. Dillon on Mun. Corp. sec. 106; 15 Am. & Eng. Ency. of Law, 1236; *Thompson* v. *Lee County*, 3 Wall. 327; *Pitzman* v. *Freeburg*, 92 Ill. 111; *Harding* v. *Railroad Co.* 65 id. 90.

The constitution of 1848,—the one applicable to this legislation,—section 23, article 3, says: "No private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." The title of the act incorporating the railroad company is: "An act to incorpo-

rate the Jacksonville Northwestern and Southeastern Railway Company." 2 Private Laws of 1867, 709.

The title of an act defines its scope. It can contain no valid provisions beyond the range of the subject there stated. Southerland's Stat. Const. sec. 102 ; *Binz* v. *Weber*, 81 Ill. 288.

Where the act, as in this case, by its title indicates nothing but the mere incorporation of a railway company, it, under our constitution, is limited to that one thing or subject, and all else embraced therein is void. *People* v. *Mellen*, 32 Ill. 181; *Village of Lockport* v. *Gaylord*, 61 id. 276; *Welch* v. *Post*, 99 id. 471; *Dolese* v. *Pierce*, 124 id. 140.

Any doubt or ambiguity arising out of the terms used by the legislature in making the grant of power must be resolved in favor of the public, and a power can not be exercised where it is not clearly comprehended within the words of the act of incorporation. 15 Am. & Eng. Ency. of Law, 1041, and authorities in note 2 ; Dillon on Mun. Corp. sec. 55.

Moreover, in construing the later charters of cities, with reference to powers conferred by former statutes or charters, the courts have established the rule, that when the new charter specifically enumerates the powers of the municipality without including a former statutory power, there must be an enabling clause empowering the new corporation to act in the particular case. *Fowle* v. *Alexandrea*, 3 Pet. 398 ; *Mayor* v. *Steamboat Co.* R. M. Charlt. 342.

In *Pitzman* v. *Village of Freeburg*, 92 Ill. 111, where in a railroad charter it was provided that the railroad company might receive subscriptions to its stock from certain municipalities, and that subscriptions should be made subject to the provisions of the law of 1849, the court held that the law of 1849 did not enlarge the grant of power as specified in the charter. Construing this section 18 according to its plain and obvious meaning, and applying to it the rule of strict construction as to the grant of power, the towns referred to by it could only

make subscriptions to the stock of a railway company, and had no authority to issue bonds in payment of such subscription, the mere authority to subscribe for stock not carrying with it the power to issue bonds in payment thereof. *Bissell* v. *Kankakee*, 64 Ill. 249; *Schaffer* v. *Bonham*, 95 id. 368; *Welch* v. *Post*, 99 id. 471; *Willis* v. *Supervisors*, 102 U. S. 625; *Claiborne County* v. *Brooks*, 111 id. 400; *Kelley* v. *Milan*, 127 id. 139; *Young* v. *Clarendon Town*, 132 id. 340; *Hill* v. *Memphis*, 134 id. 198; *Merrill* v. *Monticello*, 138 id. 673.

Without notice the election is void. 6 Am. & Eng. Ency. of Law, 300; *People* v. *Gochenour*, 54 Ill. 123; *Stevens* v. *People*, 89 id. 337; *Williams* v. *Town of Roberts*, 88 id. 11; *Railroad Co.* v. *Virden*, 104 id. 339; *Williams* v. *People*, 132 id. 574; *People* v. *Jackson County*, 92 id. 441; *Harding* v. *Railroad Co.* 65 id. 90; *Post* v. *County of Pulaski*, 47 Fed. Rep. 282.

When an election is held at a time not fixed by the law itself, or by some person authorized by law to fix the time, it will be void. 6 Am. & Eng. Ency. of Law, 318, 319; *Harding* v. *Railroad Co.* 65 Ill. 90; *Williams* v. *Town of Roberts*, 88 id. 11; *Stevens* v. *People*, 98 id. 337; *Williams* v. *People*, 132 id. 574; *Kinfield* v. *Irwin*, 45 Cal. 164; *Post* v. *County of Pulaski*, *supra.*

Where there is authority in a municipal corporation to aid railroads, and thereby incur debts, such power does not authorize the issue of bonds, except subject to the restrictions and limitations of the enabling act. *Rich* v. *Mentz Township*, 134 U. S. 632; *Young* v. *Clarendon Town*, 132 id. 340; *Kelley* v. *Milan*, 127 id. 139; *Claiborne County* v. *Brooks*, 111 id. 400; *Wills* v. *Supervisors*, 102 id. 625; *Hill* v. *Memphis*, 134 id. 198; *Onstott* v. *People*, 123 Ill. 489; *Welch* v. *Post*, 99 id. 471; *Gaddis* v. *Richland County*, 92 id. 119; *Williams* v. *Town of Roberts*, 88 id. 11; *Middleport* v. *Insurance Co.* 82 id. 562; *Supervisors* v. *Jackson County*, 77 id. 59; *People* v. *Logan County*, 63 id. 374; *Marshall County* v. *Cook*, 38 id. 44; *Williams* v. *People*, 132 id. 574.

The purchaser of a bond may not trust the recitals of a bond, or of any one who assumes to make the same, but

153—35

he must go to the statute and the record of the proceedings of the municipality—all being public and open to him—and learn whether the law has been complied with. *Gaddis* v. *Richland County*, 92 Ill. 119 ; *Howett* v. *School District*, 94 id. 528; *McClure* v. *Township of Oxford*, 94 U. S. 429; *Ogden* v. *County of Daviess*, 102 id. 634; *Anthony* v. *County of Jasper*, 101 id. 693 ; *Post* v. *County of Pulaski*, 47 Fed. Rep. 282.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment rendered by the county court of Morgan county against certain lands of appellants returned as delinquent by appellee, as collector of said county, for the taxes of 1890. Appellants, as owners of said lands, tendered, in apt time, all taxes except the tax designated "City Bond Tax," and filed numerous objections to the rendition of judgment, alleging that said tax was for the payment of interest on railroad aid bonds issued by the town of Waverly, November 1, 1870, to the Jacksonville Northwestern and Southeastern Railway Company, and that said bonds were illegal and void. On the hearing, evidence was introduced showing the tax in question was for the payment of interest on these bonds ; that in pursuance of a vote of a majority of the legal voters of the town, at an election held on the 17th day of June, 1870, purporting to authorize the town authorities to subscribe $30,000 to the capital stock of the company, the corporate authorities had issued the bonds to the amount of the stock so authorized to be subscribed ; that the bonds were duly registered in the office of the Auditor of State, December 5, 1870, pursuant to the provisions of an act entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns," in force April 16, 1869, and that the Auditor had, on November 17, 1890, certified to the county clerk of Morgan county the rate per centum of tax to be levied on the property in the town of Waverly for that year to pay

the interest on said bonds ; that Waverly had become in-
corporated as a city, and that no levy had been made by
it of the tax in question.   Some evidence was also intro-
duced as to the calling of said election of June 17, 1870,
and as to whether or not any notice of the election had
been given as required by the statute, but this evidence
will be noticed at another place.   The county court over-
ruled the objections and rendered judgment against ap-
pellants' lands for the amount of the tax, and appellants,
having preserved their exceptions, now prosecute this
appeal.

No brief or argument has been filed in this court by
appellee, but we have been much assisted in the investi-
gation by the able brief and argument filed by counsel
for appellants.

In the first place, it is contended by counsel for ap-
pellants that the town of Waverly was never authorized
by the legislature to issue the bonds in question.   It is
contended that the act of November 6, 1849, (Laws of 1849,
2d Sess. p. 33,) authorized only counties and cities to issue
bonds in aid of railroads, and that the provisions of the
act of April 23, 1867, incorporating the railroad in ques-
tion, (2 Private Laws of 1867, p. 709,) purporting to ex-
tend the act of 1849 to incorporated towns, was repugnant
to that provision in the constitution of 1848, then in force,
which provided that "no private or local law which may
be passed by the General Assembly shall embrace more
than one subject, and that shall be expressed in the title."
The title of the act incorporating the company is, "An
act to incorporate the Jacksonville Northwestern and
Southeastern Railway Company."   Section 18 of this act
declares and makes the act of November 6, 1849, above
mentioned, applicable to towns, and provides as follows :
That it (said act of 1849) shall be "applicable to each and
every town now incorporated or that may hereafter be
incorporated, situated at either end and near the line of
said railway as it may hereafter be surveyed and located ;

and the corporate authorities of any such town may order an election or elections to be. held in such town, by the legal voters thereof, upon the question whether the town, in its corporate capacity, will or will not subscribe to the capital stock of said railway company any sum not exceeding $50,000; and in case any such election shall be held, the same shall be conducted as the town elections, and if at any such election a majority of the voters voting shall be in favor of making such subscription, the provisions of the two acts recited in this section, and also of all other general laws relating to subscriptions by counties or cities to the capital stock of railroad companies, shall apply to and govern the corporate authorities of such town in making such subscriptions, so far as the same is applicable, and in all the subsequent proceedings relating thereto, and the rights of said town shall be the same, with the like remedies to enforce such rights, as the rights and remedies of counties in cases of county subscriptions." 2 Private Laws of 1867, pp. 714, 715.

Counsel insist that the subject matter of this section of the charter of the company is to amend and enlarge the scope of the act of 1849 so as to include a class of municipalities not theretofore included in the act of 1849, and has no relation to the incorporation of the company, and not being expressed in the title, said section 18 is unconstitutional and void. This court has, however, settled this question adversely to appellant's contention. In *Town of Abington* v. *Cabeen*, 106 Ill. 200, the decisions bearing upon the question here raised were reviewed, and it was held that it was germane to the purpose of the act of incorporation of the railroad company to confer on municipalities the power to subscribe to the capital stock of the company, to issue bonds of the town therefor, and to provide the mode of the exercise of such power. It was there said: "The title adopted being sufficient to apprise the legislators fairly of the general subject matter of the act, all provisions therein fairly related to that

general subject, and designed to conduce to the building
of the road named, must, in the light of previous deci-
sions of this court, be held to be fairly embraced in the
title adopted."

It is next contended that said section 18 of the charter
of the company, so far as it extended the act of 1849 to
towns then or thereafter to be incorporated, was repealed
by the act incorporating the town of Waverly. The act
incorporating the railroad company became a law on
April 23, 1867, and it is said that at that time the town of
Waverly did not exist, but was first incorporated two
days later,—April 25, 1867,—by special charter, which
specifically enumerated all of the corporate powers of the
town, and that the power to subscribe for stock in, and
to issue bonds in aid of, this railroad company, is not
found among such enumerated powers, and that to remove
all doubt on the subject the 28th section provided that
"all acts or parts of acts coming within the provisions of
this act, contrary to or inconsistent with its provisions,
are hereby repealed." (3 Private Laws of 1867, p. 371.)
This act is entitled "An act to the better provide for the
incorporation of the town of Waverly," and would indi-
cate that the town was already incorporated, but no prior
incorporation has been pointed out. If it had been previ-
ously incorporated, the repealing clause in the special act
of April 25, 1867, would readily be understood as appli-
cable to its previous charter. But as we view the ques-
tion it is immaterial whether the town had been previously
incorporated or not. There was no inconsistency between
the provisions of its special charter and the previous
acts of the legislature expressly conferring power on such
towns to subscribe for stock and issue bonds in aid of
railroad companies. The act incorporating the railroad
company and the one incorporating the town were passed
at the same session. The former made provision for con-
ferring this power on towns thereafter to be incorporated
as well as those already incorporated, and when the

latter act was passed incorporating the town, it, the town, became clothed with this additional power as fully as if it had been expressly embraced in its charter. The two acts must be construed together, and when so construed there is no repugnancy between them. Repeals by implication are not favored in law, and there being no express repeal and no inconsistency between the two acts, it is difficult to see how the repeal was effected. *Town of Ottawa* v. *County of LaSalle*, 12 Ill. 339; *Butz* v. *Kerr*, 123 id. 659.

In this construction we are not unmindful of the rule that where there is any fair or reasonable doubt concerning the existence of such a power in a municipal corporation, such doubt should be resolved against the corporation, and the power denied. In construing the two statutes in question it is the duty of the court to so construe them as to give effect, if possible, to both, and to every part of each. But if the incorporation of every town subsequently to the passage of the act incorporating the company should be held as excluding from the town the power attempted to be conferred by the charter of the company unless also contained in the charter of the town, then the provision conferring such power on towns to be thereafter created would be nugatory. Why provide in the charter of the company that all towns thereafter created, situated at either end or near the line of this road, should have the power to subscribe to the stock and to issue its bonds in aid of the construction of the road, if the town could not have or exercise such power unless conferred by its own act of incorporation? It could not be material whether the power was contained in the special act of incorporation or in some other act.

It is next insisted that section 18 of the act of April 23, 1867, did not authorize the issue of bonds. It is said that while this section started out by declaring the act of 1849 applicable to towns, it then proceeds at once to make provision for an election independently of such act; that

the section contains within itself a complete provision
for the election relative to subscriptions for the stock of
the company, and that there is no room for the applica-
tion of the law of 1849; that if such law could be invoked
at all it must be after the election and canvass of the
vote, and relate only to the making of the subscription.
Many authorities are cited by appellants to show that
mere authority to subscribe to the capital stock of rail-
road companies does not carry with it the power to issue
interest-bearing bonds in payment of such subscription.
This proposition will be conceded without argument, but
the construction sought to be given to section 18, above
referred to, would require us to wholly ignore a substan-
tial part of the act of 1849 made applicable to towns.
If only a part of the act, viz., the part authorizing sub-
scription, and not the part authorizing the issue of bonds
in payment, had been meant, it would surely have been
so expressed. It is very true that said section 18 pro-
vides that the election shall be held the same as other
town elections, and that if a majority of the voters voting
shall so vote, then the act of 1849 shall be applicable.
It is also true that the act of 1849 required such majority
to be a majority of all the votes cast at the preceding
general election, and that the two acts are not altogether
consistent in this respect, but the mere fact of such incon-
sistency in the respect mentioned would not render the
rest of the act of 1849 inapplicable. It will be noticed
that by said section 18 the law of 1849 is made, not only
"to apply to and govern the corporate authorities of such
town in making such subscriptions, so far as the same
may be applicable," but also "*in all the subsequent proceed-
ings relating thereto.*" We know of no subsequent proceed-
ings, and none have been pointed out, relating to such
subscriptions, except to provide for paying for the amount
of stock subscribed for, and which payment, under the act
of 1849, was authorized to be made in bonds of the munici-
pal corporation. The first part of section 18 makes all of

the act of 1849, not only the part authorizing subscription, but the part authorizing the issue of bonds in payment therefor, applicable, so far as general language can do so, and the latter part of the section clearly contemplates that its applicability shall not be restricted to the matter of subscription, only, consequently the mere fact that the section also makes a different provision in relation to the election from that in the act of 1849, does not so restrict the applicability of the act as to exclude the power, otherwise conferred, to issue bonds in payment of such subscription.

We think counsel are also in error in supposing their contention is supported by *Pitzman* v. *Village of Freeburg*, 92 Ill. 111. The charter of the company mentioned in that case merely authorized the directors to *receive* subscriptions to the capital stock from any county, city, town or village, and made such subscriptions binding, and provided that they should be made, in every respect, subject to the provisions and restrictions of the said act of 1849, and it was held that the charter did not *confer power* on municipal corporations to subscribe to such stock, and that the reference to the act of 1849 did not enlarge the grant.

The next contention of appellants is, that there was no sufficient call for and notice given of the election as required by the statute, and it is insisted, and properly so, that unless there was a proper call for the election by the corporate authorities of the town, fixing the time when it was to be held, and sufficient notice thereof given as required by the statute, the vote at such election would be ineffectual as authority for the town authorities either to make the subscription to the stock or to issue the bonds of the town in payment therefor. That there was an election held, and that the vote was canvassed by the board of trustees of the town on July 11, 1870, and a large majority found to be in favor of the subscription, appears from the records of the town given in evidence,

and a copy of one of the bonds given in evidence by agreement—it having been agreed that the others were of the same tenor and effect—recites that its issue was "duly authorized by a majority of the qualified voters of said town, at an election held for that purpose on the 17th day of June, A. D. 1870." The bonds contain this further recital: "This obligation is issued in part payment of a subscription of three hundred shares, of $100 each, of the capital stock of the Jacksonville Northwestern and Southeastern Railway Company, made by the said president and trustees of the town of Waverly, by authority of an act of the General Assembly of the State of Illinois, approved November 6, 1849, and the several acts of the said General Assembly amendatory thereof, and of an act incorporating the Jacksonville Northwestern and Southeastern Railway Company, approved February 23, 1867, and also of a vote of the qualified voters of the said town of Waverly, by authority of the said several acts, at an election duly held in said town on the 17th day of June, A. D. 1870."

The only other evidence in the record to show that the election was properly called, or that the notice required by the statute was given, was contained in an entry in the records of the proceedings of the town board of Waverly, and was as follows: "The petition of sundry citizens and tax-payers presented, praying for a special election to be held for subscription of $30,000 to the capital stock of the Jacksonville Northwestern and Southeastern Railway Company. Moved and seconded that the election be held as specified in said petition. Messrs. P. Kimber, Hawley, Salter, and others, were present. After which the vote was taken and the motion carried, and an election ordered at not less than thirty days' notice." And it is insisted by appellants that this entry of the clerk was no proper call by the trustees of an election, at which the legal voters should determine whether the subscription should be made or not and the bonds of the town issued

in payment; and that, to use counsel's language, it "simply shows the action of the board on the receipt of a petition of sundry tax-payers, and a motion, with a second, that the election be held as specified in the petition; what the specifications of the petition were does not appear, so that it can be told, from the entry, when the election was to be held, where the polls were to be opened, and how the election was to be conducted."

That the evidence on this branch of the case is scant is obvious, and the result, so far as this decision is concerned, must depend on whether appellants, who were objecting to the rendition of judgment against their lands, assumed the burden of proof, and were bound to establish the invalidity of the bonds. The record does not show whether these bonds are still in the hands of the railroad company that procured their issue, or have been assigned to *bona fide* purchasers for value, nor whether the town has paid the annual interest for the twenty years or more since their issue, or not. If the company named as payee in the bonds were suing to recover on them, for principal or interest, the question relating to the burden of proof would be presented in a different form from what it is on this record.

It has been repeatedly held by this court, that in the application of the collector for judgment against delinquent lands for taxes the collector's sworn report of the delinquent list, with proof of publication and notice of application, make a *prima facie* case, and if there are any valid objections not appearing on the face of the application it is for the land owner to make them appear. In *Pike et al.* v. *People*, 84 Ill. 80, it was objected that the taxes were illegal and void for reasons insisted on but not proved. And in *People* v. *Givens et al.* 123 Ill. 352, it was objected that a certain assessment for drainage purposes was invalid because the drainage district referred to in the collector's delinquent list had no legal existence, and the district had no right to assess a tax for drainage

purposes, and on other grounds bringing in question the validity of the original special assessment; but in the absence of proof of the allegations contained in the objections, this court held that the People were entitled to judgment, and that the burden of proof rested on the land owners to prove such facts as would show the invalidity of the tax. (*Durham* v. *People*, 67 Ill. 414; *Mix* v. *People ex rel.* 81 id. 118; 86 id. 312; *Karnes* v. *People*, 73 id. 274; *Buck* v. *People*, 78 id. 560; *Chiniquy* v. *People*, id. 570; *Frew* v. *Taylor*, 106 id. 159; *Brackett* v. *People*, 115 id. 29.) In *Chiniquy* v. *People, supra,* where a tax to pay interest on railroad aid bonds was brought in question by objections made to the rendition of judgment on the collector's application, this court said : "The bonds having issued, it must clearly appear that they were issued without authority, before the tax levied to pay the interest could be defeated." Moreover, in the case at bar, when the hearing came on in the county court, appellants assumed the burden of proof, and undertook to establish the allegations contained in their objections, which challenged the validity of the bonds and of the tax levied to pay interest on them.

The question is therefore presented, did appellants overcome the *prima facie* case made by the collector? As we have seen, it is not a question of the absence of power in the town to subscribe for the stock and issue the bonds, but, at most, of a defective exercise of that power, dependent upon questions of fact put in issue by the objections.

Appellants put in evidence the entry in the town record set out above, and called the present city clerk of Waverly, who testified that the book produced was the record of the town board of Waverly for 1870, and is the only book in the office for that time, and contains the proceedings for that year, and that on thorough examination of the book he found no other entry in it relating to the railroad subscription. Appellants also called Gilman

Ford, who testified he had been the clerk of Waverly for most of the time since 1872. He identified the book containing the said entry as the record of the proceedings of the town of Waverly, stated he had examined it, was familiar with it, and so far as he knew there was no other order in the book directing an election for the purpose of the subscription. Both he and the present clerk testified, on cross-examination, they had never found any notices or other papers pertaining to the election on file in the clerk's office—had found nothing except the said entry in said record book. Neither witness was asked or testified as to whether or not he had searched for any such notices, papers or other records in the proper office or place where they ought to be found, if in existence, and could not and did not testify that there were none. Neither the clerk who made the entry nor any person having anything to do with or having knowledge of the election of June 17, 1870, or the calling of it, was called as a witness. Nor does the record disclose that any effort was made to prove whether or not, as a matter of fact, proper notices of the election were given in the manner and for the length of time prescribed by the statute. It may be that, from the lapse of time, direct proof of either the affirmative or the negative would have been difficult to obtain; but the mere fact that these two clerks did not know of any notices or other papers or records, and had never been able to find any, would not authorize the court to find that none had ever existed.

In *Jacksonville Northwestern and Southeastern Railroad Co. v. Town of Virden*, 104 Ill. 339, this court held that the validity of bonds issued by a town does not depend upon the performance by the clerk of his duty in keeping a record showing his authority for giving notice or of the notice calling an election, but depends upon the substantial compliance with the requirements of the law authorizing the election to be held; that otherwise it would be in the power of the clerk to invalidate bonds clearly

legal and binding, by refusing to make a record that the
order was made or notice given.   The decree of the cir-
cuit court holding the bonds of the town of Virden, issued
under the same provision of the charter involved in the
case at bar and under the act of 1849, invalid, was affirmed
in this court on the ground that the allegations of the
bill that no order was ever made by the town authorities
for the calling of the election, or authorizing the clerk to
give the required notice, were confessed.   As admitted
of record in that case, it stood as if it had been affirma-
tively proved that the town authorities had never ordered
any election, or any notice thereof to be given.

In *Maxcy et al.* v. *Williamson County*, 72 Ill. 207, on a bill
filed by tax-payers to enjoin the collection of a tax levied
to pay interest on railroad aid bonds issued by the county
of Williamson after the adoption of the constitution of
1870, it was held that, the bonds having been issued and
put in circulation, all reasonable presumptions will be
indulged in favor of their regularity until overcome and
rebutted.   The court further said :   "Nor is the mere alle-
gation and proof that evidence of the notice or result of
the election cannot be found, material to the validity of
the bonds.   *   *   *   The written evidence being lost or
destroyed, it was competent to prove the fact by parol."
See, also, *Town of Prairie* v. *Lloyd*, 97 Ill. 179.

In various ways appellants alleged in their objections
that the corporate authorities of the town of Waverly did
not call any election, or give any notice or authorize any
notice to be given of an election, and that no election
was in fact held, in pursuance of law, respecting said
subscription and issue of bonds ; and they, properly, hav-
ing assumed the burden of proving the substance of the
issues thus formed, it was incumbent on them to adduce
their evidence and develop their case as fully as the na-
ture of it would reasonably admit of.   It is true, that so
far as these allegations required the proof of a negative,
plenary proof was not required; but as the evidence

bearing upon the issues was not in the possession or control of appellee, and was equally accessible to appellants, they should have produced sufficient proof to overcome the *prima facie* case made by appellee, and raise the presumption that the allegations contained in their objections were true.   This was not done.   Everything proved may be accepted as true, and yet the election in question may have been properly called, in pursuance of proper notice given, and conducted strictly as required by the statute.   And still further, it is perfectly consistent with the evidence that the notices given, or copy thereof, and other papers and files, are still in existence, for, as before said, there was no proof of any sufficient search for them.

As to the order or call for the election, given in evidence, and which it is insisted is wholly insufficient, as fixing no time or place for holding the election and for divers other reasons, it is sufficient to say, that this entry in the record book discloses that there was a "petition of sundry citizens and tax-payers presented, praying for a special election to be held for subscription of $30,000 to the capital stock" of the company, and that it was "moved and seconded that the election be held as *specified in the petition.*  *  *  *   The vote was taken and the motion carried, and an election ordered at not less than thirty days' notice," and that, the petition not being produced or accounted for or its contents shown, this court cannot say there was no sufficient call.   It may be, so far as the evidence discloses, that the petition is on file, and states with great particularity the very matters which appellants complain are not in the record book.   The election was ordered to be held *as specified in the petition.*   We can not assume there were no specifications in the petition, nor that any such specifications were insufficient in definiteness, or otherwise, when taken in connection with the action of the town board, to make the call for the election such as to comply, in every respect, with the statute.

This view also disposes of another question raised by appellants, namely, that even conceding there was a proper call for and notice of the election, and an election held, they related only to the question of subscription to the capital stock, and in nowise authorized the issue of bonds. As before seen, the town had the necessary power, not only to subscribe for the stock, but to issue its bonds in payment, when authorized by a vote of the legal voters at an election held as provided by the statute, and, as the question is presented by this record, the same presumptions must prevail, and it must be presumed that the calling and notice of the election embraced the question of the issue of bonds as well as subscription to the capital stock.

It is, however, said, that this court has decided that all such bonds issued since the adoption of the constitution of 1870 are *prima facie* invalid, and that the burden of proving their validity by showing they come within the exception to the clause of the constitution prohibiting subscriptions to railroads by municipal corporations, rests on him who affirms their validity. (See *Wright* v. *Bishop*, 88 Ill. 302; *Jackson County* v. *Brush*, 77 id. 59; *Middleport* v. *Insurance Co.* 82 id. 562; *People* v. *Jackson County*, 92 id. 441; *Town of Prairie* v. *Lloyd*, 97 id. 179; *People* v. *Town of Bishop*, 111 id. 124; *Williams* v. *People*, 132 id. 574.) And it is contended that, in view of the law thus held, the burden of proving full compliance with the law, in order to bring the bonds in question within the saving clause of this provision of the constitution, devolved on appellee. All of the cases last above mentioned were ordinary suits at law or in equity, except *Williams* v. *People*, and the parties interested in the bonds were parties to the suit, and the rule requiring the land owner objecting to the validity of a tax, in a proceeding of that kind, to assume the burden of proving its invalidity, did not apply. Here, neither the maker, payee nor holder of the bonds is a party, but it is simply a statutory proceeding by a public

officer in compliance with his official duty to collect a tax, and appellants having alleged and assumed the burden of proving that no sufficient call or order for the election had been made or notice given by the town board, should have proceeded with their proof, under the rules of evidence, until their allegations were established, at least so far as their negative character would admit of. While *Williams* v. *People, supra,* was a proceeding like the one before us, the record showed affirmatively that the required notice was not given, and the bond tax was therefore held invalid.

The bond given in evidence by agreement of the parties, showed that it was issued November 1, 1870,—that is, after the adoption of the constitution; but it also recited that it was duly authorized by a majority of the qualified voters of the town, at an election duly held for that purpose on the 17th day of June, 1870, and was issued in part payment of the town's subscription for $30,000 of the capital stock of the company, made by authority of certain recited acts of the legislature. It also showed that it had been duly registered in the office of the Auditor of Public Accounts, as provided by the statute. Thus it will be seen that the same instrument of evidence, viz., the sample bond, which was relied on to raise the presumption of illegality because issued after the adoption of the constitution of 1870, furnished, at the same time, evidence to rebut such presumption, by tending to show that its issue was, to use the language of the constitution, "authorized under existing laws, by a vote of the people of such municipality prior to such adoption."

We are of the opinion that, as the evidence is presented by this record, the judgment of the county court is right, and it must be affirmed.

*Judgment affirmed.*