(No. 27955.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* ELINOR M. HAMILTON, Appellant.

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

ADELBERT BROWN, ROY R. BARR, and ROBERT E. CORCORAN, (ROBERT N. HOLT, and JOHN J. O'BRIEN, JR., of counsel,) all of Chicago, for appellant.

THOMAS J. COURTNEY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, OTHO S. FASIG, EMMETT HARRINGTON, and J. HERZL SEGAL, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Appellee, county treasurer and ex-officio county collector of Cook county, made application to the county court for judgment and order of sale of real estate for delinquent taxes for the year 1940. Appellant, Elinor M. Hamilton, had paid a part of the taxes levied against her property by the city of Chicago, under protest, and when appellee applied for judgment she filed objections and sought refunds of the part alleged to have been illegally collected. Some of her objections were overruled. Revenue being involved she has brought the case to this court by direct appeal.

The objections urged here pertain to alleged excessive levies made by the city of Chicago and are based upon the following facts. In the appropriation ordinance adopted January 11, 1940, the city council carried as an asset of the city $1,200,000 under the title "Investment in Capital Accounts." However, such item was not appropriated, and, therefore, was not reflected in the tax levy for the year. Appellant contends that part of such sum was a liquid asset and should have been appropriated and had it been so included it would have reduced the amount necessary to be raised by taxation.

The origin, character and purpose for which the $1,200,000 was carried were as follows. The sum is the total of the balances of six capital accounts created by city ordinances. An ordinance creating the first account was adopted in 1913 and the last in 1927. The title of the several accounts in a degree reflected the purpose for which they were created, namely: street restoration capital ac-

count, electrical construction, architectural, electrical wiring and repair service, electrical wire and repairs stock, and electrical stock account.

· The initial capital of each account was provided by the ordinance creating the account. No part of the taxes levied for 1940 was to be used to replenish the capital of any one of said accounts. The accounts are used to create a pool of labor, material or equipment to be drawn upon to pay claims for labor, material or equipment which have been used for some corporate purpose and for which an appropriation had been made. When an appropriation for corporate purpose has been made and labor is to be performed or material furnished that comes within such purpose, the labor and material are, in the first instance, paid from the proper capital account. If it is for material, that is requisitioned from the stock carried by a capital account and when the services have been performed, the items, whether labor or material, are charged to the proper corporate fund for which the service had been performed. A warrant for collection is issued in favor of the capital account and against the proper corporate purpose fund. By bookkeeping entries the capital account is repaid all it has expended for such service and a charge in the same amount is entered against the corporate fund for which the service or material was furnished. The charge includes costs of overhead, losses by deterioration and all other losses and charges incurred by the capital account. It is obvious that the purpose is to provide an account of money or material which is available for use in the various departments of the city government. It avoids a multiplicity of stocks of materials and insures a source from which labor and material are readily obtainable in the various departments of the city government. The evidence shows that some of the accounts in question revolve as many as ten times in one year.

The assets of the capital accounts are carried on the books of the comptroller in two funds, listed as "Cash and

Warrants for Collection to City Departments" and "Inventory, Material and Equipment." The balances vary, some having practically all of the capital in material and equipment, while others have all money and warrants. This is dependent on the purpose specified in the ordinance for which the account was created. The total of $1,200,000 representing the balance of six accounts was divided $775,411.48 to the cash and warrants account, and $530,470.43 to the material and equipment account. It is not claimed that the latter fund is a liquid asset so that it could be included and appropriated in the appropriation ordinance.

It should be observed that these capital accounts are separate and distinct from the city's Work Cash Fund authorized by statute and for the maintenance of which taxes may be levied. Appellant does not raise any question as to the power of the city council to adopt an ordinance setting up capital accounts in the manner which they have been maintained for many years. She rests her claim on the ground that the item $775,411.48 was a liquid asset of the city and the failure to appropriate it made way for an excessive levy.

Further analysis of the item of $775,411.48 shows that it is composed, part cash and part warrants for collection. The evidence does not fix with any degree of certainty the part of said total which was cash and the proportion warrants for collection. The chief clerk of the comptroller's office estimated the total cash of the six capital accounts as of the date of the estimates as about 10 per cent of the total. On the basis of such estimate there was approximately $80,000 cash and $700,000 warrants for collection.

Section 2(a) of article 7 (Ill. Rev. Stat. 1939, chap. 24, par. 102,) prescribes the requirements of an appropriation ordinance for cities with populations·the size of Chicago. It directs that "Such ordinance shall set forth estimates, by classes, of all current assets and liabilities of each fund of such city or village, as of the beginning of said fiscal

year, and the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof."

In view of the foregoing provision of the statute, it becomes necessary to consider the item of $700,000 represented by warrants for collection. There could be little question but what such warrants were a liquid asset as to the capital accounts which held them, but it is quite a different matter to say they were liquid assets such as to require them to be included in an appropriation ordinance. They were drawn against and payable from funds for which there had been an appropriation. The money that was in such funds was not available for any purpose other than that for which it had been appropriated. If at the end of the fiscal year, labor, material or both had been furnished by the capital accounts which had not been paid from the proper fund, then the capital accounts held the warrants for collection, and the city council in making its estimate of current assets and liabilities of such fund as of the beginning of the fiscal year would necessarily have to include the unpaid warrants for collection held by the capital accounts. The direction of the statute is specific that the city council in determining the amounts of the assets of the funds which are available for appropriation for the current year shall consider, among other things, liabilities of each fund which were unpaid at the beginning of the year. Assuming, as we must, that the city council drafted its appropriation ordinance in accord with the mandate of the statute, then it could not carry the $700,000 worth of warrants for collection as a liquid asset subject to appropriation for that year.

The item of $80,000 cash in the capital accounts was not a fixed amount. The record does not show the total cash appropriated for the respective funds. It varied from time to time depending on purchases of stocks and supplies

carried in the funds and the expenditures made from it for the various corporate purpose funds. Whatever the various sums were in the beginning, it is evident that it was used for a purpose of the city in setting up its financial structure. It was an asset of the city but not liquid in the sense that it was subject to. appropriation and use for general corporate purposes. Had it been included as an asset subject to appropriation, it would have been necessary for the council to have appropriated an equivalent amount to preserve the capital of the capital accounts.

Appellant relies upon cases such as *People ex rel. Nash* v. *Maxwell & Co.* 359 Ill. 570, and *People ex rel. Gill* v. *Schiek*, 368 Ill. 353, for the principle that a city may not levy a tax greater than sufficient to meet the actual needs for the current year. That principle would receive full application if it was found that the city was carrying a liquid appropriable asset in the several capital accounts. But holding, as we do, that the balances in such accounts were not subject to appropriation for the year 1940, the principle has no application.

Appellant further contends that even though her contentions in reference to the item of $775,411.48 be decided against her, there is another item of $38,656.40 which is excessive. The total tax levy of $37,000,000 added to the appropriable current assets and revenue from other sources equals $77,047,565.42. This sum exceeds the total appropriation of $77,008,908.42 by $38,656.45. The rate required to produce same would be .001936 per $100 assessed valuation. The percentage is so small that if it was deducted from the rate used by the clerk in extending the tax, it would not change the rate. Under authority of *People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142, the validity of this objection will not be considered.

The judgment of the county court is affirmed.

*Judgment affirmed.*