(No. 30846.—

THE PEOPLE *ex rel.* Louis E. Nelson, County Collector, Appellee, *vs.* CARL W. BEU, Appellant.

*Opinion filed January 19, 1949—Rehearing denied May 11, 1949.*

ADELBERT BROWN, of Chicago, for appellant.

WILLIAM J. TUOHY, State's Attorney, and BENJAMIN S. ADAMOWSKI, Corporation Counsel, (JOSEPH F. GROSSMAN, and ROBERT J. NOLAN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

The county court of Cook County overruled certain objections of appellant to the collector's application for judgment and order of sale of real estate delinquent for nonpayment of general taxes of the city of Chicago for the year 1945. This appeal is for the final determination of the correct amounts of such taxes paid under protest; and comes directly to this court pursuant to section 2 of article VI of the constitution of 1870.

In this court the appellant has assigned, briefed and argued eight specific alleged errors. In the lower court the appellant, (objector,) submitted proof consisting solely

of public records, *viz.:* the county clerk's rate card, municipal ordinances and the report of the city comptroller for the year 1944. The appellee, (relator,) submitted and the court received in evidence parol testimony of the comptroller and other municipal employees. The objection of appellant that such was inadmissable to alter, explain away, or enlarge upon records required by law to be kept, was overruled.

The first assigned error alleged the relief fund levy produced $515,086 in excess of appropriation requirements. This excess was brought about, according to the appellant, because the corporate authorities did not consider the net cash of $513,327.35 in the emergency relief fund as available for 1945 relief fund appropriations. The appellant argues that the statute (Ill. Rev. Stat. 1943, chap. 24, par. 9-68) requires the comptroller to submit a tentative budget before December 1, setting forth the estimated current assets and liabilities, which he must revise within fifteen days after the beginning of the new fiscal year upon the basis of information then available. He says the city of Chicago had a policy of neglecting to revise budgets to conform with the known amount of current assets and liabilities at the beginning of the fiscal year, and that this court has held, in *People ex rel. Schlaeger* v. *Frankenstein & Co.* 396 Ill. 524; *People ex rel. Schlaeger* v. *Bunge Brothers Coal Co.* 392 Ill. 153, and other cases, where the amount of current assets and liabilities can be ascertained with certainty from the records, such known amounts cannot be over- or understated under the guise of estimates causing excessive appropriations and tax levies.

The appellant in his reply brief admits the net amount in the emergency relief fund came from the State instead of from any municipal tax, and takes refuge behind the proposition that since the comptroller's report showed it to be an available balance his statement should prevail. He

says because the emergency relief cash must be devoted to the same purpose as the cash raised by taxation according to statutory requirements, and inasmuch as the latter authorizes the city to levy a relief fund tax, that net cash was an appropriable item. The State has assumed the burden of providing additional funds for relief purposes which are allocated to municipalities according to the degree of need evidenced in monthly estimates submitted to the Public Aid Commission which is the supervising agency of the State controlling the distribution and use of the emergency relief funds provided. (Ill. Rev. Stat. 1943, chap. 23, par. 394.) This statute also forbids the allocation of State funds to any municipality which has failed to levy the maximum amount which may be raised by local taxation for local relief. It is clear the taxing authorities did not possess the right under the law to treat the restricted emergency relief fund as an appropriable item, for the estimate report of the comptroller cannot in any event change a restricted fund composed of State money into municipal funds subject to appropriation to reduce the local maximum levy demanded by statute as a condition precedent to enjoying such State fund. The county court did not err in overruling this objection of the appellant.

The appellant charged error in the action of the county court in not sustaining his contentions that the cash available for 1945 corporate fund judgments was understated to the extent of $493,986 and that the levy for the judgment tax fund was excessive to the extent of producing resources in excess of requirements. The two will be consolidated for determination. These arose, according to the appellant, through the failure of the corporate authorities to consider as appropriable assets the following items, "Liability of Sundry Warrants to Judgment Tax Fund, $217,119.83" and "Liability of Sundry Warrants to Account for Paying Chicago Judgments, $493,986.63," making a total of $711,106.46. This was shown on the comptroller's

report for December 31, 1944, wherein it was also shown that the above liabilities were those of the special assessment fund. According to this report that fund had in it, in cash, $3,173,326.80, all of which was specifically committed to the various liabilities stated including the two stated above. The county court allowed the comptroller, over the objection of the appellant, to testify to matters in respect to those two liabilities which would make the payment of them highly contingent upon the happening of events liable to be problematical and long postponed. What the comptroller testified to was not incorporated in any revision of his report. In fact no revision of the report of the comptroller would have been necessary in regard to the two liabilities of the special assessment fund to the judgment funds, for at the time he compiled that report he knew of all the facts he incorporated in his oral testimony. He cannot orally impeach his own report which he considered as a final official public record. According to that report the two items of liability were current assets available for appropriation. The appellee takes the view that the facts here and the facts in *People ex rel. Schlaeger* v. *Siebel,* 388 Ill. 98, are so similar that the holding in that case applies here to sustain the overruling of the two objections. In the *Siebel case* the annual budget of the Sanitary District of Chicago disclosed the corporate fund had either advanced or loaned money to the bond and interest fund. We held the amount so advanced could not be considered as a current asset available for appropriation unless the evidence shows it to be available, and such showing was not made. In the instant case the report of the comptroller showed cash was available to pay the indebtedness of the special assessment fund to the two judgment funds. The county court erred in overruling the two objections.

By objection 12a, the objector-appellant seeks to void $3,940,000 of bonds issued by the city council on February 27, 1945, to fund all outstanding judgments and interest

thereon. The 1945 tax levy included $1,188,493.75 for the payment of the first installment of principal and interest of this bond issue. The appellant objects because (1) appropriations were made and also taxes were levied in 1945 to satisfy those judgments in full, authority did not exist for the issuance of these bonds and (2) the tax levy to pay the judgments in full and the tax levy to pay the bond issue installment of principal and interest constituted a double tax against the taxpayers for the same year for the same purpose.

Should all the above facts so alleged be true, the objection would be valid. The appellant states them to be facts and the original briefs filed do not belie them. However, a closer scrutiny discloses they are not all borne out by the record and that a *tax levy* had not been made during the year 1945 for the purpose of providing funds to pay the judgment debt for the payment of which the bonds were issued.

The total judgment debt of the city on January 1, 1945, including the interest thereon was $6,020,925.14. When broken down between the corporate purposes fund judgments and the judgment tax fund, the accounts stood as follows:

*Corporate purposes fund* . . . . . . . . . . . . . . . . . $4,039,315.64
    Judgments . . . . . . . . . . . . $3,374,569.96
    Interest . . . . . . . . . . . . . . .   664,745.68
*Judgment tax fund* . . . . . . . . . . . . . . . . . . . . . $1,981,609.50
    Judgments . . . . . . . . . . . . $1,697,963.60
    Interest . . . . . . . . . . . . . . .   283,645.90

In disposing of objection 12a we need not consider the status of the judgment tax fund. A tax of $1,250,000 was levied in 1945 for this fund, which, when added to what we found the realizable resources to be, produced a surplus. Whether that particular levy was made is not in dispute.

The comptroller in his annual report to the city council for the year ending December 31, 1944, purported to state the corporate purposes fund balance sheet and therein struck a balance between current assets and current liabilities. The city council in estimate number 1 of part A of the appropriation ordinance for 1945, covering the corporate purposes fund, stated the appropriable current assets of that fund to be $15,453,000.00, as of January 1, 1945. The liabilties of that date to be appropriated for out of those current assets amounted to $12,297,555.13; leaving an estimated surplus of $3,155,444.87 appropriable for 1945 for liabilities to be incurred during the year. Part B of that ordinance lists the appropriations for liabilities existing on January 1, 1945. Under the "corporate purposes fund" division thereof current assets are appropriated to take care of the $12,297,555.13 of current liabilities. This includes the $4,039,315.64 for judgments and interest on judgments, i.e., the $3,374,569.96 for corporate purposes fund judgments and $664,745.68 interest thereon. Examination of the tax levy ordinance for 1945 fails to disclose that the the city council ever levied a tax for the corporate purposes fund in order to pay the judgment liabilities thereof. What other taxes were levied for that fund completely exhausted the power of the council in that respect, and the taxes levied could not, under the law, be applied to the payment of those judgments. The yields of the levies had to be applied to the particular objects and purposes set forth in the levy ordinance. The appellant's allegation that the tax levy was made to pay all of the judgments is not supported by the record; and since appellant predicates the lack of authority to issue the bonds upon an appropriation made and a tax also levied, both being necessary and co-existent to effectuate the appropriation, the objection cannot be sustained. The bonds here have issued and it must be clearly made to appear the same were issued without authority, which is a burden resting upon the objector. (*Chiniquy* v. *People ex*

*rel. Swigart,* 78 Ill. 570; *Hutchinson* v. *Self,* 153 Ill. 542.) This he has failed to do and both bases for the objection must necessarily fall. Therefore the objection cannot prevail and the county court did not err in overruling it.

Appellant's fifth assigned error charged the county court erred in overruling his objection that current assets available for corporate fund appropriations were understated by $1,789,337. This objection involves the working cash fund of the city, which has been a source of litigation ever since it was established. This particular objection is somewhat confused by the verbal fisticuffs of the appellee and appellant concerning the effect of a certain connection between this and another overruled objection relating to the same fund. We will ignore that because the appellee resists the present objection for lack of legal merit.

The real cause of this particular trouble is the failure of the comptroller to understand that a theory or convenience of accounting cannot prevail against the law. In his method of keeping books on the working cash fund he has treated the fund as containing more money than the statute permits it to contain. The legislature in 1930 enacted a statute enabling municipalities with a population of more than 150,000 to create and maintain a working cash fund. (Smith-Hurd Stat. 1933, chap. 24, pars. 667a, *et seq.*) This fund could be raised either by a bond issue, a tax levy, or by a combination of the two; the two could not be used disjunctively to raise more than the legislative limit on the fund. The maximum fixed by that body was $12,000,000. The city of Chicago immediately raised that sum by issuing nonreferendum bonds. It then proceeded to levy a direct annual tax with the evident intent of increasing the existing fund over the statutory limit, or of creating a second working cash fund. Before this tax raising was ended by this court in *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285, the city had unlawfully collected $4,667,834.

The comptroller, instead of permitting himself to be governed by the plain language of the statute in his bookkeeping on the working cash fund, never credited it with only containing the $12,000,000 maximum, but he added the above amount of tax receipts thereto and considered the fund contained $16,667,834. The money raised by the illegal taxes belonged to the taxpayers who had contributed thereto; in the event their rights to the tax money have been extinguished by operation of law, the money belongs to the general corporate fund. (*People ex rel. Toman* v. *Baltimore & Ohio & Chicago Railroad Co.* 381 Ill. 585.) Taxes from an illegal levy cannot be used for the purposes levied. (*People ex rel. Schlaeger* v. *Brand,* 389 Ill. 298.) Subsequent to the creation of the fund and prior to 1933, the comptroller, still the victim of his primary error, had his account of the fund show that within the above period the sum of $14,878,496 was withdrawn from the fund and placed in the general corporate fund. This left an actual balance of $1,789,337 and that is the bone of contention in this objection. Insofar as the record shows, no taxpayer ever made claim to any portion of the $4,667,834, and just when that amount became a part of the corporate fund is not important in this case. Subtract the $4,667,834 from the $14,878,496 and we have $10,210,662, which is the actual amount in fact and in law that was transferred from the working cash fund to the general corporate fund. That last amount subtracted from the $12,000,000 of the working cash fund gives, after allowance for fractions of a dollar, the $1,789,337 involved in the objection. It is the balance remaining in the working cash fund after withdrawals therefrom and is not the balance according to the erroneous manner of accounting employed by the comptroller.

The appellant's objection is based solely upon the proposition that the $1,789,337 is a part of the $4,667,834 de-

rived from the illegal levies, belongs to the corporate fund, and is therefore a current appropriable asset that should have been appropriated. The fact that it was not, led him to believe such assets were understated, thereby increasing the tax levy. Since the $1,789,337 was never a part of the illegal tax levies, but was always a part of the working cash fund, his objection is without force and the county court did not err in overruling it.

The appellant objected to the appropriation and levy for the library fund and the municipal tuberculosis sanitarium fund as excessive because the current liabilities of the two funds were overestimated according to the December 31, 1944, report of the comptroller. This objection was overruled and that is assigned as error. The comptroller in his report did not consider the December payrolls of the two funds and the bills of one as accounts payable for they had not been vouchered as of January 1. The comptroller subsequent to that date never revised his report as to those liabilities. Thus the appropriation for "estimated" current liabilities which included those three items was excessive when compared with the report.

The appellee seeks to circumvent this objection by arguing the applicability of *People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142. The particular ruling in that case which is invoked here arose from an objection which was, in the language of the court, "If for the current year a valid levy is made for estimated expenditures to be made during such current year, can such levy be reduced by showing that liabilities charged against uncollected taxes of previous years have become, or may possibly become, invalid?" The difference in that case was clearly pointed out in *People ex rel. Schlaeger* v. *Dennis & Co.* 397 Ill. 381, at page 386, in which we held "There is nothing in that case [the *Mercil case*] which holds that an *amount known*, or to be determined in a definite way, could be estimated." The validity of the estimates of current liabilities is not involved

in this case. The issue really is: What was the known amount of current liabilities on January 1,—those stated in the comptroller's report, or those liabilities, plus whatever other liabilities were covered by the appropriation and levy but not stated in the report?

Section 9-68 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1943, chap. 24, par. 9-68,) sets forth in explicit language just what the comptroller is required to do in respect to his annual budget report and the revision or amendment thereof. This court has in the past construed this section and one of like import affecting the board of education of the city of Chicago. It was summed up in *People ex rel Nelson* v. *Ridge Country Club,* 399 Ill. 46, wherein we said, "The taxing authorities are fully aware of the requirements of the statute, and can readily procure the information, and are not authorized to make a levy based on estimates until such amounts have been ascertained." The comptroller could have obtained the actual figures in respect to the three items in ample time after January 1, 1945, to have revised his report to the corporate authorities charged with the duty of making the appropriation and levy. The duty also rested upon those corporate authorities to procure the correct amount of the liabilities before passing the appropriation ordinance. The county court erred in overruling this objection.

There was appropriated and a tax levied for $150,000 "For aid in National, State and Local defense;" one third to be spent by the mayor and the balance by the city council. This was objected to as being an illegal corporate expense, for the city of Chicago is not charged by the Federal constitution and the Congress with the duty to provide for the common defense, and the latter has not delegated such duty to the city.

The appellee believes the appropriation to be legal because made in January, 1945, during the last war while fighting was in progress. It argues the appropriation was

to provide for possible contingencies resulting from enemy action, such as the interruption of sewer or water facilities, dislocation of traffic, need to supply additional police in emergencies and to guard against emergencies endangering the health and safety of Chicago citizens. That finds no support in the record. The object of the appropriation was aid in the national, State, and local defense. The kind of aid,—where, when and how it was to be given,—was left to the sole discretion of the mayor and of the council. Was the aid to be the purchase of material of war, the buying of war bonds, the furnishing of entertainment to bolster the morale of the soldiers, or whatever purpose the mayor or council envisioned as an aid in defense of the country, State or city? The ordinance is so vague and indefinite that it does not meet the minimum requirements in respect to informing the taxpayer how the money is to be spent.

Section 8 of article I of the Federal constitution gives to the Congress the sole power to declare and carry on a war and to repel invasions. Coupled with this is the power to lay and collect taxes to provide for the common defense and welfare of the United States.

Generally, a municipal corporation possesses only such powers as the State confers upon it by action of the legislature, (*City of Rockford* v. *Nolan,* 316 Ill. 60,) and they are divisible into express and implied powers. (*People ex rel. McDonough* v. *Marshall Field & Co.* 355 Ill. 633.) The implied powers must be incident to the powers expressly granted. (*Arms* v. *City of Chicago,* 314 Ill. 316.) A city council is limited to the exercise of powers conferred by the State. (*Board of Education* v. *Alton Water Co.* 314 Ill. 466.) It is fundamental that a city council cannot enlarge its powers by ordinance. The State of Illinois cannot declare or wage war, and it cannot empower one of its municipal corporations to do so. The State has never bestowed on municipal corporations the express power to

give either direct or indirect financial aid to the Federal, State, or local governments in the prosecution of a war. There being a lack of express power as the genesis of the claimed implied power, the latter does not exist. The county court erred in overruling the objection.

A tax was levied for the following items contained in the appropriation ordinance: "For expense in connection with post war planning under the direction of the Commissioner of Public Works—$20,000," for the same purpose, "to be expended upon authority of the City Council—$11,131.78" and, "For investigations by the Chicago Housing Authority of housing facilities and planning for improvements of sanitary conditions in sub-standard housing —$30,000." The appellant objected to each appropriation as being vague and indefinite, and not for corporate purposes. The objections were overruled and error assigned.

The sum of the three items is $61,131.78. The tax levy of $37,000,000 for corporate purposes warranted a final rate of .781872. The base rate was 1.55. Subtraction of the sum of the three items from the above levy leaves a remainder so close to the levy that it would not cause a perceptible change in the final rate for that levy, and likewise would not produce a change in the base rate. This court will not pass upon the validity of a tax levy when whatever decision it may make would not alter the base rate. (*People ex rel. Toman* v. *Mercil & Sons Co.* 378 Ill. 142; *People ex rel. Schlaeger* v. *Hamilton,* 387 Ill. 250.) The burden was on the appellant to show the base rate fixed by the county clerk will be changed when there is involved the infinitesimal part of one cent in the rate. The county court's decision on this objection stands.

The final assignment of error is predicated upon the county court having allowed the comptroller, and other agents of the city, to testify during the hearing on the objections wherein variances between the contents of the

comptroller's report and the contents of the appropriation ordinance in respect to particular items were involved. In those instances the appellant objected on the ground that a public record required to be kept by a public official under mandate of law could not be explained, altered, varied or enlarged by parol testimony.

Whether the county court acted correctly must depend upon the character of the comptroller's report. The comptroller of a municipal corporation is a public officer. The report involved in this controversy is one the statute requires him to keep, and the minimum informative matters it shall contain are prescribed in the statute in detail. (Ill. Rev. Stat. 1943, chap. 24, pars. 9-67, 9-68 and 22-1.) The report will contain complete information in regard to the financial condition of the city at the end of the fiscal year, provided it is compiled as the statute requires. From this report the corporate authorities will derive the information needed when starting the annual appropriation ordinance for the new fiscal year. The legislature was aware that in the time between the submission of the report to the council and the completion of the appropriation ordinance, there undoubtedly would be changes in the financial affairs of the city. Consequently, it embodied in the statute a requirement that the comptroller shall submit to the city council a revised report within the first fifteen days of the new fiscal year. Such revision shall be made upon the basis of information available to the comptroller when the revision is made. He has no discretion concerning the mode of transmission of information coming to him about changes in the city's financial affairs subsequent to his report. It must be by the revised report. That is mandatory. The revised report may, in the discretion of the comptroller, be amended any number of times prior to the passage of the appropriation ordinance. Whether this matter of amending the revised report is really discretionary with the comptroller, or, in the light of all the pertinent sections of the

statute, is mandatorily required, we need not decide, for that is not in issue here.

The appellee regards this report as nothing more than a general balance sheet of the city's finances, saying. the purpose thereof is to serve the corporate authorities when they frame the appropriation ordinance and is not to inform the general public, for the statute does not require its publication and general distribution. To this we do not subscribe. A taxpaying citizen of Chicago is only a small fraction of the whole population of the city, but he does have a direct and personal interest of some magnitude in the condition of the finances of the city at the end of the fiscal year as such relates to the appropriations and tax levy for the coming year, for he and his taxpaying brethren foot the tax bill. The required report, the revised report, and any amendment of the latter constitute public records. Being public records they are on file in the office of the comptroller subject to inspection by the public.

The rule preventing the parol explanation, alteration, varying, enlarging, contradicting or supplementing of records of public officials required to be kept by them by law has long been the established law of this State. (*People ex rel. Toman* v. *Chicago Heights Terminal Transfer Railroad Co.* 375 Ill. 590; *People ex rel. Yohe* v. *Hubble,* 378 Ill. 377; *Patterson* v. *Crowe,* 385 Ill. 514; *People ex rel. Reich* v. *McCoy,* 387 Ill. 288; *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434.) The rule is not one of evidence but is a rule of substantive law. Without this rule, or with it and without its enforcement, the essential purpose and potency of public records would be quickly destroyed. The pleading of inconveniences or hardships as an excuse for not complying with the rule has no force whatever.

The admission of the parol testimony complained of herein was a clear violation of the rule. The cases submitted by the appellee, wherein it was recognized by this

court that the testimony of experts is admissible to explain matters which are not of common knowledge and which require experience in their handling for a complete understanding of the subject matter, clearly, are not applicable.

The judgment of the county court of Cook County is affirmed in part and reversed in part, and the cause is remanded to that court with directions to modify its judgment to comply with this opinion.

*Affirmed in part and reversed in part, and remanded with directions.*