WALTER R. CRAVENS, Plaintiff-Appellant, v. WILLIAM G. HUFF, d/b/a Huff Equipment Company, *et al.*, Defendants-Appellees.

Fifth District   No. 5—84—0125

Opinion filed March 13, 1985.

John Long, of Troy, for appellant.

Thomas F. Crosby, of Winters & Garrison, of Marion, for appellee William G. Huff.

William Robin Todd, of Flora, for appellee Knapp Oil Company.

JUSTICE KARNS delivered the opinion of the court:
Appellant, Walter R. Cravens, appeals from the judgment of the

circuit court of Williamson County which dismissed with prejudice his action against Knapp Oil Company, Inc., and William G. Huff, d/b/a Huff Equipment Company.

Knapp was a judgment creditor in an attachment suit brought in Clay County in which Knapp prevailed by default against H. E. & C. F. Blinne Contracting Company, Inc. (Blinne Co.), for nonpayment of a fuel bill. Knapp's judgment in the amount of $6,925.84 plus costs was obtained in May 1978, and an execution sale was conducted in October of the same year, at which Huff purchased all of the equipment which had been levied upon by the sheriff. Cravens, an employee of Blinne Co., upon learning of the sale in December 1978, demanded from Huff the return of several items in which he claimed ownership: an Eimco bulldozer, a Diamond Reo semi-truck, and some chains and boomers from the semi and a winch truck.

In February 1979 Cravens intervened in the Clay County attachment case seeking recovery of his construction equipment. He was joined in this endeavor by H. E. Blinne, an officer of Blinne Co., who asserted individual ownership in certain other items purchased at the sale. In November 1979 Blinne Co. filed a petition to set aside the sale, asserting various irregularities, including Blinne's claim that Cravens owned the Eimco bulldozer and the Diamond Reo semi-truck, both of which were sold in the execution sale.

In September 1981 the circuit court of Clay County entered an order dismissing Knapp from the case because Blinne Co. had failed to state a cause of action against it in the petition to set aside the sale. That order also noted that Cravens' pleadings had been withdrawn. In December 1981 Cravens filed the instant complaint in Williamson County, asserting a common law action for compensatory and punitive damages for the improper seizure and sale of his construction equipment. After defendants Knapp and Huff moved to dismiss the Williamson County complaint, Cravens moved for and was granted a written order of voluntary dismissal without prejudice from the Clay County action.

On October 4, 1982, the Clay County circuit court entered a summary judgment against H. E. Blinne rejecting his claim of ownership in the sale items. In May 1983 the execution sale was upheld by summary judgment in Huff's favor. Each of these judgments was upheld on appeal to this court. (*Knapp Oil Co. v. H. E. & C. F. Blinne Contracting Co.* (1984), 125 Ill. App. 3d 1178 (Rule 23 order).) Meanwhile, in response to a motion by Knapp and Huff, the Williamson County court ruled that the summary judgment of May 1983 and the dismissal of Knapp in 1981 operated by *res judicata* to bar Cravens'

prosecution of the instant suit. The question raised on the pleadings is whether Cravens' claim is precluded by the Clay County judgments.

The rules of preclusion were reiterated by our supreme court in the recent case of *Housing Authority for La Salle County v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959. The doctrine of *res judicata* provides that a final judgment on the merits concludes the rights of the parties and their privies and bars subsequent actions between them involving the same claim, demand or cause of action. When *res judicata* is applied, all issues which were or could have been raised in the prior suit are barred from subsequent consideration. The rule of collateral estoppel prohibits relitigation of issues actually decided in a prior suit between the same parties or those in privity with them. 101 Ill. 2d 246, 251-52, 461 N.E.2d 959, 961-62.

Applying the preclusion doctrines by traditional analysis, we hold that Cravens is not barred from pursuing his claim in Williamson County. The law is clear that one is not estopped or barred by a prior adjudication if he was not a party to such action and does not stand in the relation of privy to one who was a party. Cravens ceased to be a party to the Clay County case long before any substantive rulings occurred. Nor can he be considered a privy to the remaining Clay County plaintiffs, having no mutual or successive relationship to the property rights which were asserted by H. E. Blinne or the Blinne Co.

Another essential consideration in the imposition of *res judicata* is whether the facts and relief sought in the two actions are substantially the same. (101 Ill. 2d 246, 254, 461 N.E.2d 959, 963.) Though common questions of law and fact relate to the Clay County suit and the instant action, the causes are sufficiently dissimilar to avoid preclusive effect. The three items of construction equipment claimed by Cravens were not affected by the Clay County judgment because ownership of the equipment was never adjudicated. The Williamson County action includes not only Cravens' claim of ownership, but a demand for remuneration of economic losses and punitive damages, which are recoverable in the distinct common law action brought in Cravens' second lawsuit, but which could not have been adjudicated in the initial suit.

The unique circumstance in the instant case which appears to have chiefly concerned the trial court is the fact that Cravens voluntarily intervened in the Clay County litigation and caused Huff to be joined as a defendant; he then unilaterally chose to withdraw from the Clay County forum in order to litigate a more advantageous suit in Williamson County. This was attacked by defendants as impermissible

forum shopping which should be prevented by the imposition of *res judicata*, referred to by the lower court as claim preclusion. The court acknowledged the rule set forth in *Sweeting v. Campbell* (1954), 2 Ill. 2d 491, 119 N.E.2d 237, which prohibits the preclusion of a claim which could have been asserted by intervention in a prior, completed suit, but distinguished the two situations by accenting Cravens' exercise of his right to intervene. The order read, in relevant part:

> "A nonparty may not be bound, ordinarily, by a judgment in a case into which he could have intervened; but, once he does intervene and then withdraws, circumstances may justify binding him to that judgment. Those circumstances exist here."

The importance of the distinction was overemphasized. The rationale behind declining to impose a general duty to intervene is equally forceful in an evaluation of a forced duty to remain in a suit. Neither is demanded under current law, and we decline to approve an exception in Cravens' case.

Knapp and Huff have urged that we look beyond the restrictions imposed under conventional preclusion doctrines and adopt the reasoning of the trial court articulated in its order of dismissal. The court's analysis was influenced by commentaries which have described the incipient formulation of concepts of case preclusion which are broader in scope than the traditional application of *res judicata*. Such principles operate to preclude the claims of parties who bypassed earlier opportunities to litigate. See 18 Wright, Miller & Cooper, Federal Practice & Procedure sec. 4452 (1981); Note, *Preclusion of Absent Disputants to Compel Intervention*, 79 Colum. L. Rev. 1551 (1979); Comment, *Nonparties & Preclusion by Judgment: The Privity Rule Reconsidered*, 56 Cal. L. Rev. 1098 (1968).

Based principally on the promotion of judicial economy, more sweeping rules of case preclusion have been employed in Federal courts to bar the claims of nonparties who could have intervened in prior actions but failed to do so. For example, in *Cauefield v. Fidelity & Casualty Co.* (5th Cir. 1967), 378 F.2d 876, the court affirmed the dismissal of a cemetery desecration action on the basis of judicial estoppel. Several other actions identical in issues and subject matter had been filed in the State court, and Cauefield's action was continued indefinitely pending a resolution of the first State case to come to trial. The evidence in the Federal case would have been exactly the same as that offered in the State court desecration suit. Therefore, the court relaxed the identity of parties requirements and precluded the Federal claim in order to "prevent fruitless relitigation of an issue" which had already been determined (378 F.2d 876, 878). The de-

cision in *Cauefield* was influenced by other cases in Louisiana which had been dismissed by preclusion in the absence of the privity requirement because of the unusual circumstances posed. 378 F.2d 876, 878-79.

The Federal cases which have extended claim preclusion are underpinned by compelling reasons for the consolidation of claims, usually concerning bankruptcies, corporate reorganizations, and huge merger cases. (See, *e.g., Penn-Central Merger & N & W Inclusion Cases* (1968), 389 U.S. 486, 19 L. Ed. 2d 723, 88 S. Ct. 602.) No such cogent reason applies in the instant case. Moreover, no real trend has developed in Federal courts or elsewhere which indicate that a departure from traditional preclusion analysis will be consistently expressed. Most importantly, no authorization exists in Illinois law to extend claim preclusion beyond traditional limits.

The order included an elaborate analysis of the reasons why the traditional concepts of claim preclusion should be discarded in order to bar Cravens' second lawsuit. We are mindful of the trial court's painstaking efforts in assessing the facts presented and are frankly inclined to endorse a thoughtful decision which would effect the highly desirable policy of putting an end to protracted, piecemeal litigation. It may well be that claim preclusion is warranted in the instant case which began with a default judgment more than five years ago and has not yet been concluded. However, in our view we are constrained under existing Illinois law to reverse the order of dismissal.

■ Cravens additionally requests that we direct the trial court to grant leave to amend his complaint by interlineation so that he may respond to various objections raised by the defendants prior to the final order of dismissal. Because we have ordered reinstatement of the case, justice requires that the plaintiff be permitted to pursue his cause of action in accordance with the liberal policy which underpins Rule 2—616 of the Code of Civil Procedure. Ill. Rev. Stat. 1983, ch. 110, par. 2—616.

The judgment of the circuit court is reversed, and the court is ordered to reinstate plaintiff's complaint and grant leave to amend.

Reversed and remanded with directions.

HARRISON and KASSERMAN, JJ., concur.